Dissenting Opinion.
Miller, J.
The plaintiff, with a franchise for a street railway extending through the neutral ground of Carrollton avenue, seeks to *862 compel the defendant, the New Orleans & Carrollton Railroad Company, to permit the use of its tracks laid, it is alleged, on the roadbed granted to'plaintiff; the use to be jointly possessed by the two companies, and on suitable compensation to be paid by plaintiff. The defendant excepted that the petition showed no cause of action'; that plaintiff had no right to use defendant’s tracks; and that plaintiff’s purchase is void for failure of the Council to comply with the law in granting the purchase. The exceptions referred to the merits were renewed in the answer, with the additional averment that defendants, in possession of its tracks for years, had expended money in laying them, and plaintiff had no right on the tracks. From the verdict and judgment in defendant’s favor, plaintiff appeals.
The plaintiff, operating a street railway in this city, obtained by transfer the right to extend its tracks to the line of Jefferson parish, on designated streets, of which Broadway was one, but before the privilege was exercised, 'the city by ordinance of September 9, 1892, authorized the purchaser of the franchise to construct the road through the neutral ground of Carrollton avenue, from Second to Fourth street, thus substituting the avenue for the distance named in lieu of Broadway. The City Surveyor, under this change, gave the plaintiff lines for the construction of the road on that portion of the avenue adjoining the banquette on the lower side. Thereafter the Council by ordinance defined the neutral ground to be the central space of sixty-six feet lying between the strips of thirty feet wide on either side next to the banquette. Then the surveyor gave plaintiff lines to run on this neutral ground. This brought about the contention now before us, as plaintiff’s lines were over the defendant’s tracks.
The ordinance under which defendant laid its tracks preceded that of plaintiff, and assigned the upper side of the avenue. The upper side might well have been deemed the space of thirty feet next to the upper banquette. No question is raised on that point, plaintiff only claiming the common use of defendant’s tracks, laid as they are on the upper side of the neutral ground, designated as the space through which plaintiff’s tracks are to pass.
We have given attention to the argument and authorities cited by defendant to support the contention that our law affords no warrant for expropriation proceedings in this case. The right to use the streets for railway purposes can not be obtained by expropria *863 tion, but is derived from the municipal authorities clothed with the power to regulate the use of th.e public streets. City Charter, Acts 1882, No. 20, Sec. 8; Elliott on Street Railways, p. —; Brown vs. Duplessis, 14 An. 842. The plaintiff in this case asserts the right claimed to be conferred by the city ordinances. The taking or rather the joint use of defendant’s tracks this suit seeks to ■enforce is merely incidental to the ordinances under which plaintiff claims. There is, hence, in our opinion, no room for the ■discussion of the right of expropriation in the usual sense of that power; the plaintiff’s right, if it exists, being derived from the ordinances. The right of the city, after selling to one company a street franchise, of giving to another company the use of the tracks ■embraced in the first franchise, is, of course, restricted, but, within the appropriate limits, is conferred by the city charter. The provision is: The city shall have the power to require and compel all lines of railway, in any one street, to use one and the same track; and it announces the policy in the public interest that no street shall be unnecessarily obstructed with a number of tracks when one will suffice. If then the ordinances relied on authorize plaintiff to use the defendant’s tracks for the short distance of fourteen hundred and forty feet, thus obviating two lines of tracks on an important thoroughfare of this city, in our view the case presents the mere question of the exercise of police power, and calls for no examination of the scope of the right to expropriate.
The exception of no cause of action raises the question, whether the ordinances relied on by plaintiff confer the right to úse defendant’s tracks. It is true the ordinances do not refer to the tracks, 'but plaintiff’s contention is, the right to their use is given by necessary implication. The Council, in designating the neutral ground of Carrollton avenue as plaintiff’s roadbed, supposed that the words used carried an accepted significance, applied to an avenue with a well defined central strip. There was testimony that the strips of thirty feet, next to the banquette on either side, were ■deemed neutral ground by the people in the neighborhood. Such ■significance, we think, to whatever extent it may have existed, was purely local, not apt to be the sense of the Council or, indeed, of any ■one employing the words to designate a portion of an avenue. In their usual acceptance the neutral ground of a wide avenue would be deemed to refer to the central space bordered by trees, and not *864 to the strips of thirty feet wide on each side next to the banquette. Without any other light than that afforded by the ordinance itself,, it seems to us it would be a most arbitrary construction to apply “neutral ground” to either strip and not to this central space. There-are other avenues of this city of which we take notice like that in Carrollton. It would hardly occur to any one to call the strips or-streets on either side of Canal or Esplanade streets neutral ground. If he used the terms, the reference would naturally be accepted as referring to the large space or middle ground, and on which it is pertinent to notice the city railways on those avenues are placed. In some of the earlier railroad ordinances the words “neutral ground” are used, and the centre and not the sides or streets were understood to be intended, and the roads located accordingly. See Ordinances City Railroad, etc.; Leovy Ordinances, pp. 437, 458, 466. As a question of construction required of us in this case, without other aids-than the ordinance, we should hold that neutral ground of Carroll-ton avenue referred to the central space of sixty-six feet. But we are not left to the original ordinance! Tbe Council by its subsequent ordinance defined neutral ground as this central space. If, as must be conceded, the Council had the power to give this right of way, there is no conceivable objection to the defining ordinance, if the roadbed was not stated with precision in the first. It is said the plaintiff at first received lines from the surveyor, assigning the lower strip of the avenue for the roadbed, and then began to construct the road. But both the plaintiff and the city abandoned that interpretation of the ordinance. If the plaintiff begun wrong, we do not appreciate it was bound to persist in the error. If the ordinance, whether original or as amended, gave to plaintiff the neutral ground for its roadbed, there was no impediment to the plaintiff availing; itself of its right. In our view, under the plaintiff’s ordinance, it, acquired the right to build its road over the central space of sixty-six feet of the avenue. That interpretation of the neutral ground would be natural under the original grant, and is exacted by the-plain terms of the amended ordinance to have effect the same as if part of the grant first conferred.
On the sixty-six feet through which the plaintiff is authorized to lay its tracks is a gravel road, twenty-five feet in width, which is. the thoroughfare for vehicles extending from Carrollton to the rear The road occupied part of the sixty-six feet when the ordinance was *865 passed and for years before. On the lower side' of this road is a row of trees ten feet in width, next the road is a space of five feet left, we presume, for the safe passage of the defendant’s ears, the tracks ' of its cars occupying eighteen feet alongside the five feet space- and succeeding the eighteen-feet on the upper side is another row of trees of ten feet. The sixty-six feet is thus already taken up to-the extent of ñfty-eight feet. There is no room for the plaintiff’s tracks, unless to the exclusion of the gravel road, or over the defendant’s tracks. With the power of the city to compel the common-use of the tracks, and under the ordinance giving plainfiff part of the-space of sixty-six feet, the Oity Surveyor gave the plaintiff lines ■over defendant’s tracks, as the only method of executing the ordinances. The defendant resists this use of its tracks. If its contention, is successful, the plaintiff can have no tracks on the sixty-sixfeet, unless it can be maintained the ordinances take from the public the thoroughfare in use for years and established at great expense. Can, any such purpose be attributed to the ordinances; or in other words is that construction consistent with the tests that guide rational interpretation? The gravel thoroughfare within the sixty-six feet is not appropriately to be designated as neutral ground. We can nod suppose, in passing the ordinances giving the right of way through neutral ground, it was the intention to destroy a public road necessary to the public, and in actual use. In view of the fact that without encroaching on this road there is copious space for both companies, if they use the same tracks, the conclusion that was the purpose seems the only reasonable interpretation of ordinances of the-city, vested with the power to compel the common use of tracks by companies having franchises on the same street. We are fortified in our interpretation by the action of the city authorities, in exercising the police power of regulating the use of the streets. There-is, in our view, no basis on which we can substitute another construction compelling the laying of four tracks on an important avenue, when two will suffice, and a construction too that leads to-the unnecessary deprivation of a roadway in use by the public. We think the action of the Oity Surveyor was within the scope of the ordinances.
It is claimed that the ordinances of the plaintiff are not legal, because it is supposed they convey street franchises not sold at public auction, (Acts 1888, No. 135). The law requires such sale of a street *866 line of railway. In this case the ordinances supply merely the means of connecting lines above and below the avenue by giving the use of the avenue for the short distance of one thousand four hundred feet. No such connection could be sold, and hence can not be deemed within the scope of 1he Act of 1888. Impressed as we rre with the duty of upholding this act of 1888, and waiving any expressions not called for in this case, we are of opinion that the controversy presents no infringement on the act.
When the city requires the use by two companies of the same tracks, there are the resulting obligations that the company holding the first franchise must be indemnified for the damage incident to yielding up its tracks; that the reconstructions for adapting the tracks to the common use be paid by the company holding the last franchise; that the cost of maintenance shall be borne equally, and that the reconstruction shall be made with the least inconvenience to the first company. Railroad vs. Railroad, 47 An. 314.
A decree in plaintiff’s favor, under the circumstances suggested, is, I think, the proper solution of the controversy. I therefore dissent from the opinion and decree.
Breaux, J., concurs in this dissent.